'IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| United States of America, | ) | C/A No. 8:18-1742-TMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Devinder Singh Dhanoa, a/k/a | ) | |
| Sukhvinder Singh, a/k/a Vora Jayendra | ) | |
| Amritlal, a/k/a Dalip Kumar, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action is a denaturalization proceeding brought pursuant to 8 U.S.C. § 1451(a) to revoke the naturalized citizenship of Defendant Devinder Singh Dhanoa, a/k/a Sukhvinder Singh, a/k/a Vora Jayendra Amritlal, a/k/a Dalip Kumar. (ECF No. 1 at 11-12). This matter is before the court on a motion to dismiss filed by Defendant. (ECF No. 19). The Plaintiff United States (the "Government") filed a response opposing the motion (ECF No. 20), and Defendant filed a reply (ECF No. 22). This motion is now ready for a ruling.

### I. Facts/Procedural Background

Defendant was born in India and became a naturalized United States citizen on September 15, 2009. (ECF No. 1 at 2, 10). Defendant first attempted to enter the United States on March 3, 1991, at the Los Angeles International Airport. (ECF No. 1 at 1, 3). He presented an Indian passport in the name of Vora Jayendra Amritlal ("Amritlal"), which was suspected of having been altered. *Id.* at 3. Therefore, he was detained for an exclusion proceeding before an immigration judge. *Id.* On March 29, 1991, he was released on bond. *Id.* Because he failed to appear for a subsequent hearing on May 28, 1991, the immigration judge ordered him excluded from the United States in

abstentia under the name Amritlal. *Id.* at 3-4. However, Defendant did not leave the United States. *Id.* at 4.

On October 20, 1993, Defendant filed a request for asylum under the name of Sukhvinder Singh ("Singh"). *Id.* at 4. On November 5, 1999, after he failed to appear for a hearing, an immigration judge ordered Defendant under the name Singh removed to India in abstentia. *Id.* at 5. On January 8, 2002, Defendant was stopped at an Immigration and Naturalization Service ("INS") checkpoint in Arizona. *Id.*[1] He was taken into custody and it was determined that he was the subject of an outstanding removal order. *Id.* Therefore, on May 6, 2002, Defendant under the name of Sukhvinder Singh was removed from the United States to India. *Id.*

On September 30, 1996, Defendant using the name Devinder Singh Dhanoa ("Dhanoa") applied for asylum. *Id.* at 5. On November 20, 1996, Defendant appeared for a hearing and testified that his first and only entrance into the United States was on February 28, 1996, and that he had used the name Dalip Kumar when he entered the United States. *Id.* at 6. Defendant was granted asylum under the name Dhanoa on December 4, 2000, and he applied for permanent residency. *Id.* On his application, Defendant stated that he had never been deported from the United States. *Id.* at 7. On August 10, 2005, Defendant received asylum under the name Dhanoa, and his status was changed to that of a permanent resident. *Id.* On June 29, 2009, Defendant applied for naturalized citizenship under the name Dhanoa. *Id.* On his application, he stated that he had never used any other names and had never been removed from the United States. *Id.* at 7-8. Defendant confirmed these statements during his testimony at a naturalization interview. *Id.* at 9. On September 15, 2009,

---

[1]As of March 1, 2003, INS was abolished, and its functions were transferred to the United States Citizenship and Immigration and Services ("USCIS") under the Department of Homeland Security ("DHS").

Defendant under the name of Dhanoa became a naturalized citizen of the United States. *Id.* at 10.

On June 25, 2018, the Government filed a Complaint seeking to revoke Defendant's United States citizenship. (ECF No. 1). The Government alleges that Defendant was previously excluded from the United States under the name Amritlal and removed from the United States under the name of Singh. (ECF No. 1-1 at 2). The Government contends that Defendant did not disclose that he had been previously excluded and removed from the United States, lied under oath about his identity and immigration history, and concealed and misrepresented material facts during his naturalization proceedings. (ECF No. 1 at 2). The Government alleges that Defendant was never eligible for the lawful permanent residency on which his naturalization was premised. *Id.* at 13-20. Therefore, the Government contends that Defendant's naturalization was unlawfully procured, and it seeks to revoke Defendant's naturalization. *Id.* at 21. Defendant has moved to dismiss alleging that the statute of limitations has run. (ECF No. 19 at 1).

## II. Applicable Law

A Rule 12(b)(6) motion should not be granted unless it appears certain that the pleading party can prove no set of facts that would support his claim and would entitle him to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the pleading party. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs.*, 7 F.3d at 1134. "To survive a motion to dismiss, a [claim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleading party] pleads factual content that allows the court to draw

the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Id.* The raising of the statute of limitations as a bar to a cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6) if the time bar is apparent on the face of the complaint. *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (citations omitted).[2]

### III. Discussion

In his motion to dismiss, Defendant contends that this court lacks subject matter jurisdiction because the statute of limitations has run on the United States' denaturalization claims. (ECF No. 19 at 1). Defendant contends that pursuant to 28 U.S.C. § 2462 all civil actions seeking a penalty or forfeiture must be brought within five years from the date the claim first accrued. *Id.* at 4. He argues that because denaturalization is a penalty and a forfeiture, the five-year statute of limitations set forth in § 2462 applies. *Id.* Defendant relies on the Supreme Court's recent opinion in *Kokesh v. Securities and Exchange Commission*, 137 S. Ct. 1635 (2017). In *Kokesh*, the Supreme Court held that disgorgement in a Securities and Exchange Commission ("SEC") enforcement action constitutes a penalty within the meaning of § 2462 because "SEC disgorgement is imposed by the courts as a consequence for violating public laws" and "for punitive purposes" and is "often not compensatory." *Kokesh,* 137 S. Ct. at 1643. Therefore, pursuant to § 2462, SEC disgorgements

---

[2]When appropriate, the statute of limitations may also be raised as a bar to a plaintiff's cause of action by motion pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See, e.g., Ammer v. United States*, 56 F.3d 60 (4th Cir. 1995); *see also Stewart v. Iancu*, 912 F.ed 693, 702 (4th Cir. 2019) (holding in a Title VII case that the district court erred in dismissing case under Rule 12(b)(1), and finding "it should have considered the 180-day waiting period as a non-jurisdictional rule and decided the case under Federal Rule of Civil Procedure 12(b)(6).").

must be commenced within five years of the date the claim accrued. *Id.* at 1645. Defendant contends that, pursuant to the holding in *Kokesh*, denaturalization is also a penalty and a forfeiture subject to the statute of limitations set forth in § 2462. (ECF No. 19 at 1). In response, the Government contends that there is no statute of limitations for civil denaturalization actions and Defendant's reliance on *Kokesh* is misplaced. (ECF No. 20 at 5, 6). Specifically, the Government argues that civil denaturalization is not a penalty. *Id.* at 6-7. In his reply, Defendant argues that the Government incorrectly relies on pre-*Kokesh* decisions and has not meaningfully addressed the holding in *Kokesh*, which he alleges has broadened when an action is considered a "penalty." (ECF No. 22 at 1-2).

"American citizenship is a precious right." *Costello v. United States*, 365 U.S. 265, 269 (1961). An individual who seeks to obtain naturalized United States citizenship must comply with the statutory requirements for naturalization. *See Fedorenko v. United States*, 449 U.S. 490, 505-06 (1981). Failure to comply with any of the requirements for naturalization renders the naturalization illegally procured and subject to revocation under § 1451(a). *United States v. Breyer*, 41 F.3d 884, 889 (3d Cir. 1994) (quoting *Fedorenko*, 449 U.S. at 506). The Government can seek civil denaturalization when the citizenship orders and certificates of naturalization were either "illegally procured" or "procured by concealment of a material fact or by willful misrepresentation." *See* 28 U.S.C. § 1451(a); *Kungys v. United States*, 485 U.S. 759, 772-73 (1988). "[T]he purpose of the denaturalization statute is not to punish citizens, but to protect the integrity of the naturalization process." *United States v. Kairys*, 782 F.2d 1374, 1382 (7th Cir. 1986) (citing *Fedorenko,* 449 U.S. at 506-507).

Section 1451, which controls this denaturalization proceeding, makes no mention of any

statute of limitations.  *See* 8 U.S.C. § 1451.  Section 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

Prior to *Kokesh*, several district courts have specifically held that § 2462 does not apply to denaturalization actions.  *See, e.g., United States v. Wang*, 404 F. Supp. 2d 1155 (N.D. Cal. 2005) (holding that denaturalization proceedings are not subject to any statute of limitation, and thus the government could institute proceeding at any time regardless of how many years had passed since citizenship was granted to defendant); *United States v. Rebelo*, 358 F. Supp. 2d 400 (D.N.J. 2005) (noting that Federal catch-all statute of limitations did not apply to a denaturalization action).

While the Supreme Court has not specifically addressed whether § 2462 applies to denaturalization actions, the Supreme Court has addressed the applicability of laches to denaturalization claims and noted held that "Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud." *Costello v. United States*, 365 U.S. 265, 283 (1961) (finding no time bar in a denaturalization case brought twenty-seven years after defendant became naturalized citizen).[3]  Likewise, additional lower courts have held that the Government may institute a denaturalization proceeding at any time regardless of how many years have passed since citizenship was granted to a defendant.  *See Kungys v. United States*, 485 U.S. 759, 764 (1988) (upholding lapse of twenty-eight years between naturalization and the initiation of denaturalization

---

[3]The court was addressing the predecessor statute to § 2462, 28 U.S.C. § 791.  Section 791 is substantively identical to § 2462, as both utilize the same "penalty or forfeiture, pecuniary or otherwise" language.

proceedings); *Fedorenko*, 449 U.S. 490 (affirming revocation of citizenship of a World War II concentration camp guard seven years after his naturalization); *United States v. Szehinskyj*, 277 F.3d 331 (3d Cir. 2002) (upholding revocation of citizenship of a World War II concentration camp guard four decades after his naturalization). In *Johannessen v. United States*, 225 U.S. 227, 242-43 (1912), the Supreme Court, addressing whether denaturalization statute was an ex post facto law, held that denaturalization does not impose any penalty upon the wrongdoer - it deprives a privilege to one who was never rightfully entitled to it.

As noted above, Defendant contends that, pursuant to the Supreme Court's recent holding in *Kokesh*, the catch-all five-year statute of limitations in § 2462 applies to denaturalization actions.[4] (ECF Nos. 19 at 4-6; 22 at 2). In *Kokesh*, the Supreme Court held that "[d]isgorgement in the securities-enforcement context is a 'penalty' within the meaning of § 2462, and so disgorgement actions must be commenced within five years of the date the claim accrues." *Kokesh*, 137 S.Ct. at 1639. The Court began its analysis by stating that "[a] 'penalty' is a 'punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws.'" *Id.* at 1642 (citing *Huntington v. Attrill*, 146 U.S. 657, 667 (1892)). The Court then found that this definition gives rise to two principles to consider when determining if a sanction is a penalty: (1) a

---

[4]Defendant also argues that, because the Supreme Court and some circuit courts have generally described a denaturalization action as a "penalty" in several opinions, the court should deem denaturalization a penalty for purposes of § 2462. (ECF No. 19 at 5, 6). These decisions are not persuasive in answering the question currently before this court. Referring to denaturalization as a penalty in passing in several opinions does not mean that these courts have declared denaturalization is a penalty pursuant to § 2462. To the extent that these characterizations rise to the level of dicta, the court finds them to be of little precedential value and not even persuasive dicta as they did not conduct any analysis on the issue in regard to § 2462. As the Supreme Court noted in *Kokesh*, although a statute may be labeled as penal, "in many cases 'neither the liability imposed nor the remedy given is strictly penal.'" *Kokesh*, 137 S. Ct. at 1642.

penalty seeks to redress a wrong to the public, rather than a wrong to an individual; and (2) "a *pecuniary* sanction operates as a penalty only if it is sought for the purpose of punishment, and to deter others from offending in like manner - as opposed to compensating a victim for his loss." *Id.* at 1642 (emphasis added). The Court determined that an SEC "disgorgement thus bears all the hallmarks of a penalty: It is imposed as a consequence of violating a public law and it is intended to deter, not to compensate." *Id.* at 1644-45. The Court also noted that "[t]he sole question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period." *Id.* at 1642 n.3. Thus, in *Kokesh,* the Court was specifically only addressing a pecuniary penalty, an SEC disgorgement. Accordingly, its holding does not compel the court to hold in this case that denaturalization claims are subject to the five-year statute of limitations set forth in § 2462.

Moreover, the only court to have addressed this exact issue post-*Kokesh* held that the statute of limitations in § 2462 does not apply to denaturalization actions brought pursuant to § 1451(a). *United States v. Phattey*, No. 3:17-cv-247-JWS, 2018 WL 4365490, *4 (D. Ak. Sept. 12, 2018), *appeal docketed*, No. 18-35998 (9th Cir. Nov. 28, 2018). The court held that

> [t]he purpose of revoking citizenship is quite obviously to take back something that was not deserved in the first place. The purpose is not to punish, but rather to restore the status quo. Revoking one person's citizenship might deter others from attempting to obtain citizenship unlawfully. However, that does not make deterrence the purpose of revocation.

*Id.* The court specifically relied upon *Johannessen*, *Costello*, and case law approving the revocations of citizenship many years after being granted. *Id.* The court finds this opinion and its reasoning persausive. In *Trop v. Dulles*, 356 U.S. 86 (1958), the Supreme Court held that

> [i]n deciding whether or not a law is penal, this Court has generally based its

8

determination upon the purpose of the statute. If the statute imposes a disability for the purposes of punishment - that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal. But a statute has been declared nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose.

*Id.* at 96 (internal footnotes omitted).

In the absence of a more forthright directive from either the Supreme Court or Congress, the court declines to apply the five-year statute of limitations in § 2642 to denaturalization actions brought under § 1451(a).[5] Accordingly, the court denies Defendant's motion to dismiss. (ECF No. 19).

### IV. Conclusion

Based on the foregoing, the court **DENIES** Defendant's Motion to Dismiss (ECF No. 19).

**IT IS SO ORDERED**.

                                         s/Timothy C. Cain
                                         United States District Judge

March 29, 2019
Anderson, South Carolina

---

[5] Additionally, the court notes that statutes of limitations are strictly construed in favor of the government. *E.I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924); *Levin v. Comm'r*, 986 F.2d 91, 93 n.12 (4th Cir.1993). "A corollary of this rule is that when the sovereign elects to subject itself to a statute of limitations, the sovereign is given the benefit of the doubt if the scope of the statute is ambiguous." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 96 (2006).